**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DEVON B. T., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 21 C 1312 |
| v. ) | |
| ) | Magistrate Judge Finnegan |
| KILOLO KIJAKAZI, Acting ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

## ORDER

Plaintiff Devon B. T. seeks to overturn the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and Plaintiff filed a brief explaining why the Commissioner's decision should be reversed or the case remanded. The Commissioner responded with a competing motion for summary judgment in support of affirming the ALJ's decision. After careful review of the record and the parties' respective arguments, the Court affirms the Commissioner's decision.

## BACKGROUND

Plaintiff protectively filed for DIB on November 6, 2018, alleging disability since September 6, 2017 due to narcolepsy, cataplexy, and sleep apnea. (R. 177, 200). Born in 1964, Plaintiff was 53 years old as of the alleged disability onset date making him a person closely approaching advanced age (age 50-54). 20 C.F.R. § 404.1563(d). He

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. She is automatically substituted as the named defendant pursuant to FED. R. CIV. P. 25(d).

1

graduated from high school and lives in an apartment with his mother. (R. 43-44, 201). Plaintiff's work history dates back to 1988 and includes positions as a mechanic, receiving associate, and package handler. (R. 201). Most recently, Plaintiff spent 8 years working as a kitchen helper at a hospital until he was fired on December 6, 2014. (R. 45, 58, 200-01). He has not looked for or engaged in any employment since that date. (R. 46).

The Social Security Administration denied Plaintiff's application initially on June 14, 2019, and again upon reconsideration on November 4, 2019. (R. 90-113). He filed a timely request for a hearing and appeared before administrative law judge Cynthia M. Bretthauer (the "ALJ") on August 13, 2020. (R. 38). The ALJ heard testimony from Plaintiff, who was represented by counsel, and from vocational expert Tobey Andre (the "VE"). (R. 40-63). On September 2, 2020, the ALJ found that Plaintiff's obesity, narcolepsy with cataplexy, and obstructive sleep apnea are severe impairments, but that they do not alone or in combination meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 25-27). After reviewing the medical and testimonial evidence, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following restrictions: occasional climbing of stairs and ramps; no climbing of ladders, ropes, or scaffolds; and no exposure to activities involving unprotected heights or being around moving and hazardous machinery. (R. 27-30).

The ALJ accepted the VE's testimony that a person with Plaintiff's background and this RFC can perform his past relevant work as a kitchen helper, and so found Plaintiff not disabled at any time from the September 6, 2017 alleged disability onset date through the December 31, 2019 date last insured. (R. 30-31). The Appeals Council denied

2

Plaintiff's request for review on December 18, 2020. (R. 5-9). That decision stands as the final decision of the Commissioner and is reviewable by this Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Whitney v. Astrue*, 889 F. Supp. 2d 1086, 1088 (N.D. Ill. 2012).

In support of his request for reversal or remand, Plaintiff argues that the ALJ erred in evaluating his subjective statements regarding his symptoms. As discussed below, this Court finds that the ALJ's decision is supported by substantial evidence.

## DISCUSSION

### A. Standard of Review

Judicial review of the Commissioner's final decision is authorized by section 405(g) of the Social Security Act (the "SSA"). *See* 42 U.S.C. § 405(g). In reviewing this decision, the Court may not engage in its own analysis of whether Plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart,* 362 F.3d 995, 1001 (7th Cir. 2004) (internal citation omitted). Nor may it "displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations." *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010) (quoting *Skinner v. Astrue,* 478 F.3d 836, 841 (7th Cir. 2007)). The court "will reverse an ALJ's determination only when it is not supported by substantial evidence, meaning 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pepper v. Colvin*, 712 F.3d 351, 361-62 (7th Cir. 2013) (quoting *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011)).

In making this determination, the court must "look to whether the ALJ built an 'accurate and logical bridge' from the evidence to [his] conclusion that the claimant is not disabled." *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Craft v. Astrue*,

3

539 F.3d 668, 673 (7th Cir. 2008)).  The ALJ need not, however, "'provide a complete written evaluation of every piece of testimony and evidence.'"  *Pepper*, 712 F.3d at 362 (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (internal citations and quotation marks omitted)).  Where the Commissioner's decision "'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).

**B.     Five-Step Inquiry**

To recover DIB under the SSA, a claimant must establish that he is disabled within the meaning of the Act.  *Snedden v. Colvin*, No. 14 C 9038, 2016 WL 792301, at *6 (N.D. Ill. Feb. 29, 2016).  A person is disabled if he is unable to perform "any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *Crawford v. Astrue*, 633 F.Supp.2d 618, 630 (N.D. Ill. 2009).  In determining whether a claimant suffers from a disability, an ALJ must conduct a standard five-step inquiry, which involves analyzing: "(1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether he can perform her past relevant work; and (5) whether the claimant is capable of performing any work in the national economy."  *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (citing 20 C.F.R. § 404.1520).  If the claimant meets his burden

4

of proof at steps one through four, the burden shifts to the Commissioner at step five. *Moore v. Astrue*, 851 F. Supp. 2d 1131, 1139-40 (N.D. Ill. 2012).

**C.    Analysis**

Plaintiff does not challenge most aspects of the ALJ's decision, including the identification of his severe and non-severe impairments, the determination that he has the RFC for a full range of work at all exertional levels with certain postural and environmental restrictions, the evaluation of the opinion evidence, or the reliance on the VE's testimony.  All of these arguments have been waived.  *Underwood v. Saul*, 805 F. App'x 403, 406 (7th Cir. 2020) (arguments not raised before the district court are waived). The Court thus focuses on the single issue addressed in Plaintiff's briefs – the ALJ's assessment of his subjective statements regarding his symptoms.

In evaluating a claimant's subjective symptom allegations, an ALJ must consider several factors including:  the objective medical evidence; the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medication; treatment and other measures besides medication taken to relieve pain or other symptoms; and functional limitations due to pain or other symptoms.  20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *5, 7-8 (Oct. 25, 2017).  "'An ALJ need not discuss every detail in the record as it relates to every factor,' but an ALJ may not ignore an entire line of evidence contrary to her ruling."  *Benito M. v. Kijakazi*, No. 20 C 5966, 2022 WL 2828741, at *8 (N.D. Ill. July 20, 2022) (quoting *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022)).  "As long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn a credibility determination unless it is patently

5

wrong." *Grotts*, 27 F.4th at 1279; *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (patently wrong "means that the decision lacks any explanation or support."). "Subjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence." *Grotts*, 27 F.4th at 1278.

Plaintiff testified that he experiences narcolepsy and cataplexy events two to three times a day where he "pass[es] out" and occasionally falls. (R. 48-50). On a typical day, he does a puzzle or watches television and goes for a 3 to 4 mile walk. (R. 47, 51). Plaintiff stated that he can cook some simple meals and do the laundry, but he does not clean and needs a friend to take him shopping since he does not have a car. (R. 51-52). In a March 15, 2019 Function Report, Plaintiff indicated that he has difficulty standing, walking, talking, seeing, and understanding, explaining that if a "muscle spasm" occurs he cannot awaken on his own.[2] (R. 220). In a second Function Report dated April 23, 2019, Plaintiff claimed that he "can't keep my eyes open [and] I fall asleep just like that." (R. 244). Shortly thereafter, on April 30, 2019, Plaintiff reported that he has a "muscle spasm" 4 to 5 times a day where he falls asleep or is in a trance. (R. 255).

In discounting Plaintiff's statements, the ALJ first noted that they were inconsistent with the objective treatment records. (R. 27, 29). The Court finds no error in this assessment. Plaintiff has a history of severe obstructive sleep apnea and narcolepsy with cataplexy, and has received regular treatment from sleep specialist Lori E. Lovitz, DO. (R. 28). Over the course of 4 appointments in 2016, Dr. Lovitz indicated that Plaintiff's sleep apnea was stable with use of an APAP (automatic positive airway pressure) machine, and his narcolepsy with cataplexy was much improved on his

---

[2] It appears from context that Plaintiff uses the term "muscle spasm" to refer to a narcoleptic or cataplexy event.

6

medication regimen (Xyrem, Effexor, and methylphenidate), though these treatments did require some occasional adjustments. (R. 458, 466, 473, 481-82).

On March 21, 2017, Plaintiff told Dr. Lovitz that his energy was better and he was trying to lose weight by doing a lot of walking, which had greatly improved his daytime sleepiness. He also received a new APAP machine in February and said "He LOVES it!!" (R. 28, 379). Dr. Lovitz assessed stable sleep apnea and stable narcolepsy with cataplexy, but noted Plaintiff did still experience excessive daytime sleepiness in part because he was "sitting around at home a lot." (R. 28, 381). She instructed Plaintiff to continue with the APAP and medications, and engage in diet and exercise to achieve weight loss. (*Id.*). Plaintiff's conditions remained stable at his next appointment with Dr. Lovitz on September 5, 2017. (R. 28, 497). He reported that his energy level and daytime sleepiness were much improved with exercise, and he had not experienced any cataplexy episodes for over 6 months. Dr. Lovitz kept Plaintiff on the same treatment regimen (medications, APAP, diet, and exercise), and instructed him to return in 6 months. (R. 28, 497-98). Plaintiff alleges that he became disabled the next day on September 6, 2017.

Plaintiff saw Dr. Lovitz again on April 6, 2018 and reported that he continued to have good energy during the day with no recent episodes of cataplexy and was doing very well. (R. 28, 348). Dr. Lovitz characterized Plaintiff's conditions as stable and instructed him to continue with APAP therapy, medication, diet, and exercise. (R. 28, 350). At his next 6-month follow-up on October 9, 2018, Plaintiff again stated that he was doing very well with good daytime energy, improved sleepiness, and rare cataplexy

episodes. (R. 28, 509, 512). Dr. Lovitz made no changes to Plaintiff's treatment regimen and he remained stable. (R. 28, 616).

On April 23, 2019, Plaintiff told Dr. Lovitz that he had experienced a "muscle spasm" the previous day and that this occurred often. (R. 613). Nevertheless, the medications were effective, he had good energy during the day with improved daytime sleepiness, and he was stable and "doing very well" on his treatment regimen. (R. 28, 615-16). Dr. Lovitz adjusted Plaintiff's APAP settings and instructed him to continue with his medications, diet, and exercise. (R. 28, 616). Plaintiff was still doing very well on October 24, 2019 though he complained of an increase in cataplexy episodes and hallucinations. Dr. Lovitz increased his Effexor dosage and adjusted the APAP settings to address these issues. (R. 28, 663, 666).

Nine months later, on July 21, 2020, Plaintiff had his last visit with Dr. Lovitz. (R. 28). He reported doing very well with "even more" improved daytime sleepiness and denied having any issues or symptoms, including hallucinations. Dr. Lovitz again characterized Plaintiff's conditions as stable and made some adjustments to his APAP settings and medication. (R. 28, 742, 744). In response to Plaintiff's assertion that his sleep disorder was getting worse and prevented him from working, Dr. Lovitz "explained it is unusual for narcolepsy patients to be this debilitated from their sleepiness" and noted that Plaintiff was on multiple medications that enhance his sleep and daytime function. (R. 28, 744). Dr. Lovitz further indicated in a July 29, 2020 Sleep Disorders Medical Source Statement that Plaintiff's cataplexy episodes only occur when he is sedentary and watching television, and do not come on suddenly or in hazardous situations (e.g., while driving or exposed to heights or moving machinery) on his medication regimen. (R. 28,

8

746). In addition to these sleep records, the ALJ also reviewed treatment notes from other medical exams that "were essentially normal on a consistent basis." (R. 29) (citing R. 328-31, 337-38, 341-42, 344-45, 353-58, 361-62, 367-68, 373-74, 398-99, 536-37, 655, 657-58, 677-78, 683-84).

Plaintiff ignores these medical records and fails to explain how they support his claims of disabling sleepiness. *See Thorps v. Astrue*, 873 F. Supp. 2d 995, 1006 (N.D. Ill. 2012) (citing *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007)) ("[A] patient's subjective complaints are not required to be accepted insofar as they clashed with other, objective medical evidence in the record."). Nor does Plaintiff address the ALJ's observation that he responded well to medication and APAP therapy. (R. 28). In formulating the RFC, the ALJ accepted that Plaintiff may have limitations related to his cataplexy and reasonably accounted for these issues by restricting him to: only occasional climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; and not even moderate exposure to unprotected heights or moving and hazardous machinery. (R. 29). The ALJ also observed, however, that "the stability of [Plaintiff's] obstructive sleep apnea and narcolepsy with improved energy levels . . . indicate that he was otherwise capable of work at all exertional levels." (*Id.*). This is consistent with the opinions from the state agency reviewers, which the ALJ found persuasive. (R. 29, 96-97, 108-10). As noted, Plaintiff does not challenge the ALJ's RFC determination or her assessment of the opinion evidence, and any such arguments have been waived. *Underwood*, 805 F. App'x at 406.

Plaintiff denies that his condition was stable, citing changes in his subjective Epworth Sleepiness Scale Scores over time. (Doc. 15, at 4) (citing R. 349, 511, 607, 614-

9

15, 665, 669-70). But these scores (which on several occasions were within the normal range) appear in Dr. Lovitz's own treatment records and she still concluded at each visit that Plaintiff's condition was stable. Moreover, Dr. Lovitz opined that it is unusual for narcolepsy patients to be disabled by sleepiness, especially while taking Plaintiff's medication regimen that was effective in enhancing his sleep and daytime function. (R. 28, 744). As a result, there is no merit to Plaintiff's general objection that he could be disabled even with repeated findings of stability. *Cf. Randi R. W. v. Comm'r of Soc. Sec.*, 421 F. Supp. 3d 616, 622-23 (N.D. Ind. 2019) (ALJ erred in emphasizing the three occasions when nurse practitioners characterized the plaintiff's multiple sclerosis, a degenerative disease, as stable while ignoring numerous records without that notation and other contradictory evidence such as decreased sensation, weakness, and difficulty walking).

Also unavailing is Plaintiff's assertion that his sleep disorder symptoms should be credited because they "would not show on a physical examination." (Doc. 15, at 4). Plaintiff himself told Dr. Lovitz on numerous occasions that he had good energy during the day, that his daytime sleepiness was improved, and that he was doing very well. (R. 379, 496-97, 348, 350, 509, 512, 615-16, 663, 666, 742). Plaintiff responds that having energy is different from falling asleep at unpredictable times (Doc. 15, at 4), but as noted, Dr. Lovitz expressly opined that Plaintiff's cataplexy episodes are not unpredictable, occurring only when he is sedentary and watching television, and do not come on suddenly or in hazardous situations on his current medication regimen. (R. 28, 746).

Plaintiff argues that remand is still required because the ALJ failed to acknowledge his lengthy work history. (Doc. 15, at 3; Doc. 20, at 1). The Seventh Circuit has made

10

clear, however, that "'work history is just one factor among many, and it is not dispositive,' nor does it operate to negate other evidence that supports an ALJ's adverse credibility finding." *Prill v. Kijakazi*, 23 F.4th 738, 747 (7th Cir. 2022) (quoting *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016)). The case likewise need not be remanded for a discussion of Plaintiff's activities of daily living. Plaintiff finds it significant that he claimed in his April 23, 2019 Function Report to be unable to drive anymore due to his conditions. (Doc. 15, at 3) (citing R. 240). But at the August 13, 2020 hearing, he said it was because he does not have a car. (R. 44-45).

Plaintiff also relies on his testimony that he stays in his house all day, has trouble running errands, and fell asleep at a Walmart on one occasion. (R. 54, 240). Yet he acknowledged that he walks 3 to 4 miles every day and is able to wash dishes, do laundry, use public transportation, go to church, and go to the grocery store. (R. 47, 241-43, 255, 258). Plaintiff does not address this evidence or explain how it supports his claims of disabling sleep problems or reflects greater limitations than those found by the ALJ. In such circumstances, the ALJ did not err in failing to expressly discuss Plaintiff's specific daily activities. (Doc. 20, at 2) (conceding that Plaintiff "does not claim that absence of discussion of his activities of daily living requires remand."). *See also Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir. 2022) (quoting *Butler v. Kijakazi*, 4 F.4th 498, 504) (7th Cir. 2021)) ("'[T]he harmless error standard applies to judicial review of administrative decisions, and we will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result.'"). Plaintiff's remaining arguments about the ALJ's purported use of boilerplate language and failure to build an accurate and logical bridge between the evidence and her conclusions, raised for the first time in the

11

reply brief and largely undeveloped, are waived. *See, e.g., Crespo v. Colvin*, 824 F.3d 667, 673 (7th Cir. 2016) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived"); *Griffin v. Bell*, 694 F.3d 817, 822 (7th Cir. 2012) ("[A]rguments raised for the first time in a reply brief are deemed waived").

An ALJ's credibility assessment "need not be perfect; it just can't be patently wrong." *Dawson v. Colvin*, No. 11 C 6671, 2014 WL 1392974, at *10 (N.D. Ill. Apr. 10, 2014) (citing *Schreiber v. Colvin*, 519 F. App'x 951, 961 (7th Cir. 2013)). And "[a]s the Supreme Court observed fairly recently, substantial evidence is not a high standard, and requires only evidence that 'a reasonable mind might accept as adequate.'" *Richard C. v. Saul*, No. 19 C 50013, 2020 WL 1139244, at *5 (N.D. Ill. Mar. 9, 2020) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)). Viewing the record as a whole, the ALJ provided enough valid reasons for discounting Plaintiff's complaints of disabling symptoms and that decision is supported by substantial evidence.

## CONCLUSION

For reasons stated above, Plaintiff's request to reverse or remand the case is denied and the Commissioner's Motion for Summary Judgment [18] is granted. The Clerk is directed to enter judgment in favor of the Commissioner.

ENTER:

Dated: February 24, 2023

_____
SHEILA FINNEGAN
United States Magistrate Judge